**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

ADAM SCOTT LEIVA and
CHRISTIN CAMPBELL-MARTIN,

               Defendants.

No. 19-CR-79-CJW-MAR

**ORDER**

---

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................ 2

II.    STANDARD OF REVIEW............................................................... 3

III.   FACTUAL BACKGROUND ........................................................... 6

IV.   ANALYSIS...................................................................................... 9

      A.     Seizure of Defendants ........................................................10

      B.     Standing to Contest the Search of the SUV...................................14

      C.     Standing to Contest the Search of the Backpack .............................20

      D.     Searches of the SUV and Backpack under the Fourth Amendment........21

            1.     Inventory Search Exception...............................................21

            2.     Search Incident to a Lawful Arrest Exception .......................26

            3.     Other Exceptions..........................................................31

V.     CONCLUSION ................................................................................32

## I.    INTRODUCTION

This matter is before the Court on a Report and Recommendation ("R&R") (Doc. 55) of the Honorable Mark A. Roberts, United States Magistrate Judge.[1]  On November 4, 2019, defendants Adam Scott Leiva ("Leiva") and Christin Campbell-Martin ("Campbell-Martin") both filed motions to suppress.  (Docs. 34 & 36).  On November 14, 2019, the government timely filed a resistance to both motions.  (Doc. 42).  On November 19, 2019, Judge Roberts held a hearing on both motions.  (Doc. 45).  On December 3 and 4, 2019, both defendants and the government timely filed supplemental briefs pursuant to Judge Roberts' Order.  (Docs. 48, 49, & 53).[2]

On January 9, 2020, Judge Roberts issued his R&R, recommending that the Court deny both defendants' motions to suppress.  (Doc. 55).  The deadline for filing objections to the R&R was January 23, 2020.  On January 23, 2020, both defendants filed objections to the R&R.  (Docs. 56 & 57).  The government did not file any objections or a response.

For the following reasons, the Court **overrules in part** and **sustains in part** defendants' objections (Docs. 56 & 57), **adopts in part** and **rejects in part** Judge Roberts' R&R with modification (Doc. 55), and **denies** both defendants' motions to

---

[1] In his motion, Leiva's counsel repeatedly refers to the Honorable Mark A. Roberts by the title "magistrate."  (Docs. 56, at 2, 11, 24, 34, 37).  The Court takes this opportunity to remind counsel that the proper title is United States Magistrate Judge.  *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 (1990).  This title has been in use for three decades now and the Court expects counsel to treat judicial officers with respect by using their proper title. *See* Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 FED. CTS. L. REV. 1, 17 (Fall 2015).  Thus, counsel should use "magistrate judge" rather than simply "magistrate."

[2] Campbell-Martin filed a timely supplemental brief on December 3, 2019, but did not include a table of contents as required.  (Doc. 50).  On December 4, 2019, Campbell-Martin requested and was granted permission to file an amended brief (Doc. 51 & 52), which she filed that same day (Doc. 53).

suppress (Docs. 34 & 36).

## II.    STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R pursuant to the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*see also* FED. R. CIV. P. 72(b) (stating identical requirements).  While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time.  *Id.*  If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate."  *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter.  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled,

no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district court's required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has concluded that general objections require "full de novo review" if the record is concise. *Id.* ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate.").

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus, although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

## III. *FACTUAL BACKGROUND*

After reviewing the record, the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in his R&R. (Doc. 55, at 3-7). Leiva raises one factual objection, which is addressed below. Therefore, the Court adopts Judge Roberts' factual findings as set forth below without modification. (*See id.*) (original footnotes omitted).

These incidents occurred on May 25, 2018 at approximately 10:30 p.m. in the north parking lot of Linn-Mar High School in Marion, Iowa. City of Marion Police Officer Nicole Hotz [("Officer Hotz")] was patrolling the parking lot at the request of the school's administrators. (Hotz Hr'g Test.) She had been actively engaged in requesting people leave the parking lot when she saw a red SUV occupied by three passengers, two of whom were ultimately identified as Leiva and Campbell-Martin.

The backseat passenger was Justin Harris [("Harris")]. Harris provided Officer Hotz an Iowa identification card to prove his identification. (*Id.*) Campbell-Martin initially identified herself as Shannon McKelvy. (Doc. 37 at 1.) Leiva initially identified himself as Favian Estrada. (*Id.*) The driver was ultimately identified as Campbell-Martin and the front seat passenger as Leiva. (*Id.*)

When Officer Hotz pulled up beside the SUV she saw Campbell-Martin raise her hands near her face in a manner Officer Hotz characterized as attempting to hide her identity. (Hotz Hr'g Test.) Officer Hotz first shined a [flash]light on the SUV before exiting her squad car and approaching on foot. (Doc. 37 at 1.) Officer Hotz's report describes Campbell-Martin's appearance and behavior when initially confronted:

> The female rolled down the window and I observed that she was very nervous and fidgety. Her speech was quick, and her pupils were constricted which was out of the normal for the darker lighting conditions. She kept pulling her knees to her chest and breathing really heavy.

(Doc. 37 at 1.) Officer Hotz's report also described the male passengers' behavior as "very quiet and [they] did not look towards me." (Doc. 37 at 1.) Officer Hotz requested identification from the occupants of the SUV. (*Id.*) Harris produced genuine identification, but each Defendant provided a name that turned out to be false. (Doc. 37 at 1.) Neither Defendant was able to supply the last four digits of his or her social security number or any form of identification. (*Id.*) Officer Hotz inquired about the car's owner. (Ex. B at 8:20.) Campbell-Martin indicated Harris was the owner, but Harris denied this, indicating it had been borrowed from one April Johnson. (*Id.*) Harris denied having a phone number to reach April. (*Id.* at 10:10.) Campbell-Martin told Officer Hotz she left her house without her "items." (Doc. 37 at 1.) Officer Hotz requested permission to search the vehicle, but Harris denied permission. (Ex. B at 9:40.)

Sergeant Richard Holland [("Sergeant Holland")] from the Marion police department subsequently arrived on the scene. (*Id.* at 13:00.) Sergeant Holland questioned the occupants of the SUV while Officer Hotz ran the information [Leiva] provided through a law enforcement database. (Ex. C at 3:00.) During this questioning, Sergeant Holland noticed a purse in the back seat of the vehicle that Campbell-Martin reported belonged to

the registered owner. (*Id.* at 3:40.) Sergeant Holland asked if he could search the purse, but Campbell-Martin explained she was unable to grant permission because the purse did not belong to her. (*Id.*)

Officer Hotz returned to the SUV after she determined the information Leiva provided was false. (Ex. B at 15:00.) Officer Hotz went to the passenger side of the vehicle and asked Leiva to get out. (*Id.* at 15:20.) At this point she noticed a black backpack on the front floor of the vehicle. (Doc. 37 at 1.) Officer Hotz removed Leiva from the vehicle and arrested him for providing false information. (Ex. B at 15:30.) Leiva then provided his real name while Officer Hotz searched him during the arrest. (*Id.*) Leiva stated he had provided false information because of pending warrants. (*Id.* at 16:35.)

Sergeant Holland briefly left the immediate scene but remained in the parking lot, encouraging other drivers to leave. (Ex. C at 10:50.) When he returned, Harris told him the registered owner had loaned them and they were "in charge of the car." (*Id.* at 15:25.) Sergeant Holland asked Harris to look through the purse, and Harris complied. (*Id.* at 16:00.)[3] Harris produced an ID for Campbell-Martin that Officer Hotz matched to the driver of the vehicle. (*Id.* at 16:45.) Officer Hotz then arrested Campbell-Martin for providing false information. (*Id.* at 17:55.)

Officer Hotz contacted a towing service for the vehicle and Sergeant Holland began what the Government contends is an inventory of the vehicle incident to towing. (*Id.* at 19:30.) Prior to the inventory Harris asked whether he could drive the car, but Sergeant Holland denied permission. (*Id.* at 18:40.) During the inventory, Sergeant Holland located what appeared to be methamphetamine inside the backpack located near where Leiva had been sitting. (*Id.* at 22:00.) This substance was later weighed and determined to be 929.5 grams of methamphetamine. (*Id.*) After

---

[3] Leiva raises a factual objection here, noting that the R&R omits that Sergeant Holland reached into the SUV several times while talking with Harris. Leiva claims this was a warrantless search of the vehicle. (Doc. 56, at 30). The Court finds the omission of these facts to be immaterial. Sergeant Holland merely leans into the SUV while speaking with Harris, who is seated on the opposite side of the backseat, and illuminates the purse with his flashlight so that Harris can search the purse at his request. Sergeant Holland only reaches into the SUV to point at things in the purse or retrieve items that Harris is voluntarily handing him. (Ex. C at 15:02). The Court will examine below defendants' standing to contest any search of the SUV. As to the purse specifically, the Court notes that Leiva has never claimed ownership of it and that Campbell-Martin repeatedly denied ownership of it at the scene before it was searched. In sum, the omission of these facts did not impair Judge Roberts' analysis.

finding this substance, Sergeant Holland instructed Officer Hotz to take Leiva out of the squad car and Mirandize him. (*Id.* at 27:10.) After Officer Hotz Mirandized Leiva, Sergeant Holland explained what he discovered in the backpack near Leiva's seat. (*Id.*) Leiva denied knowledge of the backpack's contents. (*Id.* at 31:35.)

Officer Hotz returned to the squad car to retrieve Campbell-Martin and Mirandize her. (Ex. B. at 45:00.) Officer Hotz questioned Campbell-Martin after she Mirandized her. (*Id.* at 46:00.) Campbell-Martin stated Leiva and Harris picked her up in Ames, Iowa because her boyfriend was abusing her. (*Id.* at 46:20.) She denied using methamphetamine and denied knowledge of the backpack containing what law enforcement believed to be methamphetamine. (*Id.* at 47:50.) She stated that Leiva first drove the vehicle and Campbell-Martin started driving after Leiva became lost. (*Id.* at 48:20.) She further stated their destination was the Microtel in Marion because she was very tired. (*Id.* at 48:20.) She also admitted she had knowledge that Leiva deals methamphetamine and that the bag belonged to him. (*Id.* at 50:00.) She stated that earlier in the day they had traveled to Altoona, Iowa where he obtained a large amount of methamphetamine. (*Id.* at 51:15.)

After Officer Hotz Mirandized both Defendants, she and Sergeant Holland conducted post-*Miranda* interviews. Sergeant Holland returned to the SUV and continued the inventory search. (Ex. C at 32:00.) Sergeant Holland found additional items in the SUV, including small baggies approximately one inch by one inch, an electronic scale, paperwork with names and dollar amounts, including both Defendants' names, a glass pipe, and cash. (*Id.* at 35:45; Doc. 37 at 5.) Sergeant Holland instructed Officer Hotz to take pictures of the SUV and transport the occupants to the police station. (Ex. C at 40:30.)

(Doc. 55, 3-7) (footnote omitted).

## IV. ANALYSIS

Both defendants have issued objections to Judge Roberts' R&R. (Docs. 56 & 57). Defendants' objections revolve around (1) the reasonableness of their seizure by Officer Hotz, (2) their respective standing to contest the search of the SUV, (3) their respective standing to contest the search of the backpack, and (4) whether those searches were

permissible under the Fourth Amendment. The Court will address each argument in turn as to both defendants.

### A. Seizure of Defendants

In his R&R, Judge Roberts found that Officer Hotz had reasonable suspicion that defendants were involved in criminal activity and thus lawfully seized defendants. Specifically, Judge Roberts found that Officer Hotz's initial encounter with defendants was voluntary and that neither defendant was seized until they were respectively handcuffed. (Doc. 55, at 9). Judge Roberts concluded that both defendants were properly seized after it was determined they each provided false information. (*Id.*). Importantly, Judge Roberts notes that a traffic stop did not occur here because the SUV at issue was already parked. (*Id.*, at 10). Rather, Judge Roberts found that Officer Hotz initiated a voluntary encounter, developed suspicion throughout her interaction with defendants, and ultimately had reasonable suspicion to seize both defendants upon confirming that they had provided false names. (*Id.*, at 13-16).

Leiva objects, arguing that because Officer Hotz's original mission in approaching defendants was to ask them to leave the parking lot, Officer Hotz's subsequent inquiry into their identities was unrelated and thus unduly prolonged the stop. (Doc. 56, at 18-21). In his objection, Leiva repeatedly refers to the facts here as a traffic stop. (*Id.*). Leiva also argues that no individualized suspicion existed as to him and Officer Hotz's request for his identification was thus unlawful. (*Id.*, at 21-23).

Campbell-Martin also objects, arguing that she was unlawfully seized when Officer Hotz approached the SUV. (Doc. 57, at 2). Campbell-Martin asserts that Officer Hotz only developed reasonable suspicion after the seizure upon Campbell-Martin's subsequent inability to verify her identity. (*Id.*). Campbell-Martin also argues that, to the extent reasonable suspicion of any other offense was present, the stop was unduly prolonged. (*Id.*).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A person is seized within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains their freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks omitted). A court must look to "all of the circumstances surrounding [an] incident" to determine if "a reasonable person would have believed that he was not free to leave." *INS v. Delgado*, 466 U.S. 210, 215 (1984). The Eighth Circuit Court of Appeals has identified seven non-exclusive factors courts should consider in determining whether a seizure has occurred: (1) whether the officers positioned themselves so as to limit the person's movement, (2) whether multiple officers were present, (3) whether officers displayed any weapons, (4) whether any physical touching occurred, (5) whether the officer's language or tone conveyed that compliance was necessary, (6) whether officer's seized any personal property, and (7) whether officers told the person that they were under investigation. *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008).

The Supreme Court has held "that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Indeed, a consensual encounter between law enforcement officers and a person is not a seizure so long as "a reasonable person would feel free to disregard the police and go about his business[.]" *Id.* Such an encounter does not require any level of suspicion. *Id.* Thus, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Id.* Further, a request to see identification is not a seizure "as long as the police do not convey a message that compliance . . . is required." *Id.*, at 435. Shining a flashlight to illuminate a person is also not an inherently authoritative act by police. *United States v. Hayden*, 759 F.3d 842, 847 (8th Cir. 2014). The Eighth Circuit Court

of Appeals has specifically held that an officer approaching a parked car and gaining the attention of its occupants alone is not a sufficient show of authority such that a reasonable person would believe they were not free to leave. *United States v. Barry*, 394 F.3d 1070, 1075 (8th Cir. 2005); *see also United States v. Vera*, 457 F.3d 831, 834, 836 (8th Cir. 2006) ("Absent a factual finding that [the officer] did more than request [the defendant] to exit his vehicle, provide his identification, and enter the patrol car, there is no basis to conclude that the encounter was anything more than consensual."). This is true even if the officer had a holstered firearm because most people would except law enforcement officers to be armed. *United States v. Drayton*, 536 U.S. 194, 205 (2002).

The Court agrees with Judge Roberts that defendants were not seized when Officer Hotz shined her flashlight into the SUV and subsequently approached the SUV. *See, e.g.*, *Barry*, 394 F.3d at 1075 (holding that an officer parking fifteen feet in front of a suspicious vehicle in an alley at night, approaching the vehicle, shining his flashlight on his uniform, keeping his hand on his holstered weapon, and knocking on the driver-side window of the vehicle did not constitute a seizure); *United States v. Gordon*, No. 8:17CR290, 2018 WL 522356, at *2-3 (D. Neb. Jan. 5, 2018) (holding that two officers stopping their patrol car behind a parked vehicle, activating their lights, and knocking on the driver-side window of a vehicle did not constitute a seizure). Here, Officer Hotz pulled alongside defendants' SUV and shined her flashlight into the SUV but defendants were unresponsive. (Doc. 46, at 3). Instead, Officer Hotz testified that Campbell-Martin attempted to block her face from view. (*Id.*). Officer Hotz's body camera shows that there was more than a parking space between her patrol car and the SUV; about twelve feet. (Ex. B at 1:25). Officer Hotz was in full uniform and had a holstered firearm but never activated her lights or sirens and never grasped or drew her firearm. (Doc. 46, at 3). Officer Hotz then exited her vehicle and walked toward the SUV, at which time Campbell-Martin rolled down her window. (*Id.*). Although Sergeant

Holland and others arrived later, Officer Hotz was alone at this time. Further, no personal property was seized before defendants were placed in handcuffs.

Of the factors listed above, the only potential show of authority exhibited by Officer Hotz was her stated suspicion that "something is going on" and her request to see identification. (Ex. B at 0:37–0:49). This request alone, however, is not a seizure. *See Bostick*, 501 U.S. at 435; *Vera*, 457 F.3d at 835-36 (noting that a mere request to see identification, as opposed to an authoritative command, does not constitute a seizure even if most people would acquiesce to such a request). Officer Hotz's general questions and requests for identification evidence little more than her intent to uncover why three adults were sitting in a high school parking lot late at night. These actions alone do not constitute physical force or a sufficient show of authority such that they would cause a reasonable person to believe they were not free to leave. Such physical force or show of authority did not occur until each defendant was commanded to exit the vehicle and placed in handcuffs. These seizures occurred only after Officer Hotz had reasonable suspicion, and in fact probable cause, to believe that defendants had provided false information.

The Court also agrees with Judge Roberts that these facts do not constitute a traffic stop because defendants' SUV was already parked when Officer Hotz made contact. *See, e.g.*, *United States v. Elias*, No. 8:17CR250, 2018 WL 3626440, at *4 (D. Neb. May 29, 2018), *adopted*, 2018 WL 3625771 (July 30, 2018) (noting that a traffic stop did not occur because the car was "already parked"); *United States v. Avalos*, No. 4:16CR3038, 2017 WL 1050102, at *5 (D. Neb. Mar. 20, 2017), *adopted*, 2017 WL 1533379 (Apr. 27, 2017) (finding that a traffic stop did not occur because the vehicle was parked at its destination); *United States v. Vargas-Miranda*, 559 F. Supp. 2d 1016, 1020 (D. Neb. 2008), *aff'd*, 601 F.3d 861 (8th Cir 2010) (holding that a traffic stop did not occur because the vehicle was parked in a parking lot). Thus, there was no undue

prolonging of any stop because no stop occurred. In any event, Officer Hotz's questioning of defendants lasted a reasonable length of time and was consistent with her broader mission of protecting the high school premises. Moreover, Officer Hotz's request to see defendants' identifications was only that; a mere request which was not unlawful and did not require any level of suspicion. *See Bostick*, 501 U.S. at 435.

Thus, the Court **overrules** defendants' objections as to their seizures and **adopts** Judge Roberts' R&R without modification.

### B. Standing to Contest the Search of the SUV

In his R&R, Judge Roberts found that neither defendant had standing to contest the search of the SUV. (Doc. 55, at 18). Judge Roberts found that Leiva "provided only an assertion, without evidence, that he had permission to use the SUV." (*Id.*, at 21). Specifically, Judge Roberts noted that the record was unclear as to who owned the SUV and who allegedly gave Harris and perhaps Leiva permission to use it. Although the vehicle was not stolen, no evidence clarified Leiva's interest in the SUV. Further, Judge Roberts found that Campbell-Martin also had "not provided evidence that the vehicle's owner intended for her to drive the vehicle, much less to have a possessory interest in it." (*Id.*, at 20).

Leiva objects, asserting that he had permission to use the vehicle and that no evidence contradicts his claim. (Doc. 56, at 10). Leiva asserts that Harris "stated at the scene that the owner gave the vehicle to both Harris and Leiva" and that no evidence indicated the vehicle was stolen or operated without consent. (*Id.*). Leiva asserts that the vehicle was loaned directly to him, thus making him a bailee with a protectable interest. (*Id.*, at 13). Leiva also notes that his belongings were present in the SUV and that he had travelled a substantial distance in the SUV that night. (*Id.*, at 12).

Campbell-Martin also objects, asserting that she had a "property or quasi-property interest in the SUV as a bailee," thus affording her a reasonable expectation of privacy

in it. (Doc. 57, at 5). Campbell-Martin also notes that the government failed to argue that she lacks standing. (*Id.*, at 3). Campbell-Martin argues that no evidence suggested the vehicle was stolen and that her mere failure to provide "definitive proof that the car was given to her by the bona fide owner" should not bar her from having standing here. (*Id.*, at 6-7).

To have standing to challenge a search, a defendant must have a reasonable expectation of privacy in the place searched. *United States v. Barragan*, 379 F.3d 525, 529 (8th Cir. 2004). The burden to prove this reasonable expectation is on the defendant. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). Courts should look to the totality of the circumstances, considering a defendant's "ownership, possession and/or control of the area searched . . .; historical use of the property or item; ability to regulate access; . . . the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Id.* A defendant's reasonable expectation must have some basis in "concepts of real or personal property law or to understandings that are recognized and permitted by society." *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978)). A defendant must establish both that they had a subjective expectation of privacy and that their expectation was objectively reasonable. *See, e.g.*, *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014) (citation omitted).

It follows then that a defendant asserting a privacy interest in a vehicle "must present at least some evidence of consent or permission from the lawful owner/renter of a vehicle to give rise to an objectively reasonable expectation of privacy." *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017) (quotations and alterations omitted). Such evidence must be produced regardless of whether the defendant is the driver or a passenger in the vehicle searched. *Compare*, *Russell*, 847 F.3d at 618 (noting the

defendant was a passenger), *with*, *United States v. Muhammad*, 58 F.3d 353, 354 (8th Cir. 1995) (noting the defendant as the driver). In *United States v. Russell*, the defendant lacked standing to challenge the search of the vehicle because, although it was rented by his girlfriend, he could not provide any evidence that his girlfriend permitted him or the driver to operate or possess the vehicle. 847 F.3d at 618-19. In *United States v. Muhammad*, the defendant also presented no evidence of authorization by the registered owner. 58 F.3d at 355. The Eighth Circuit Court of Appeals rejected the defendant's argument that the "lack of evidence that the car was stolen" was enough to meet his evidentiary burden. *Id.* In *United States v. Andrews*, the court found that the defendant lacked standing because, although he alleged that he had permission from someone to operate the vehicle, he never presented evidence that he obtained permission from the lawful owner of the vehicle. No. 18-CR-149 (SRN/DTS), 2019 WL 4165149, at *8 (D. Minn. Sept. 3, 2019). In *United States v. Bettis*, the defendant had standing to contest the search because the vehicle's renter testified that she gave him permission to drive it. No. 17-cr-48 (WMW/TNL), 2017 WL 9249436, at *5-6 (D. Minn. June 19, 2017). In short, a defendant who does not have any ownership or possessory interest in a vehicle must present some evidence that someone with authority gave the defendant permission to operate or otherwise possess the vehicle.

Defendants have failed to provide any evidence from which the Court could find they had permission from the lawful owner to use the SUV. When initially asked who owned the SUV, Campbell-Martin identified Harris. (Ex. B at 8:20). Harris quickly denied ownership, stating that the vehicle belonged to a "friend;" either April Johnson or April Johnston. Harris then revised that April was a "friend of a friend." (*Id.*, at 8:50). Harris did not have any contact information for this person. Kristin Jefferson was determined to be the registered owner. Harris then stated April was merely a co-signor. (Ex. C at 9:25). Harris later told Sergeant Holland that the SUV was given to

him, without mentioning Leiva as being jointly authorized.   Sergeant Holland then asked Harris whether the co-signor gave him permission.   Harris corrected Sergeant Holland, stating it was the "co-signor's cousin."   (Ex. C at 15:25).   April Johnson, April Johnston, nor Kristin Jefferson were contacted at the scene or afterwards to confirm in any way that defendants were given permission by someone with an ownership interest in the SUV.   None of the three were called as witnesses at the suppression hearing or provided any other form of evidence showing that Leiva or Campbell-Martin had authority to possess or operate the SUV.   Leiva never personally asserted that the SUV was given to him.   None of the occupants ever claimed the SUV was given to Campbell-Martin.

A bare assertion of authorization from a third party along with the lack of evidence the car was stolen, without more, is insufficient to show defendants' have standing here. *See Russell*, 847 F.3d at 618-19; *Muhammad*, 58 F.3d at 355; *Andrews*, 2019 WL 4165149, at *8.   Some evidence of authorization from someone with authority over the vehicle is necessary.   *See, e.g.*, *Bettis*, 2017 WL 9249436, at *5-6.   Leiva's reliance on *United Stated v. Best*, 135 F.3d 1223 (8th Cir. 1998), is misplaced.   (Doc. 56, at 11-13).   The Eighth Circuit Court of Appeals held that the defendant in *Best* would have standing if he provided evidence that he had permission from the authorized renter, not merely permission from anyone at all.   135 F.3d at 1225.   Similarly, Campbell-Martin provides *United States v. Baker*, 221 F.3d 438 (3d Cir. 2000), as persuasive authority that persons other than the registered owner can grant permission.   (Doc. 57, at 7).   The Third Circuit Court of Appeals held that "[a]lthough defendant and his associates were somewhat vague about who owned the car, there is no evidence in the record that the car was stolen[.]"   *Baker*, 221 F.3d at 442.   The lower court elaborates that two friends of the defendant, neither of whom was the registered owner, both claimed to be the owner and testified that the defendant had permission to operate the vehicle from them.   No.

97-00297, 1999 WL 163631, at *2-4 (E.D. Penn. Mar. 17, 1999). Even if the Court accepts that the registered owner is not the sole person who can authorize others to use a vehicle, the defendant in *Baker* presented some evidence of authorization. Specifically, he presented the sworn testimony of two persons who both claimed ownership, albeit in conflict, and who both asserted that they had given defendant permission to use the vehicle. No such evidence was present here.

Leiva cites various statements made at the scene as evidence that Harris and Leiva were jointly given authorization to drive the SUV. (Doc. 56, at 10, 13-14). Most of these statements merely established that both Harris and Leiva were in the car when Campbell-Martin was picked up. Leiva misquotes Sergeant Holland's video at 15:40; Harris did not say the SUV was given to "us." Sergeant Holland asked Harris whether the car was given to "you," to which Harris replied "yes." (Ex. C at 15:24). Harris later told Sergeant Holland that he and Leiva picked up the SUV together. (*Id.*, at 31:18). At best, these statements show that Harris and Leiva jointly picked up the SUV and later picked up Campbell-Martin. These statements do not establish that anyone with authority gave Leiva or even Harris permission to drive the SUV. At best, the Court could interpret the vague exchange to show that Harris was "given" the SUV, and that Leiva was along with Harris when Harris picked up that SUV. That might be enough for Harris to have standing, but not Leiva.

Defendants have failed to present any evidence that they had permission from someone with authority over the SUV and, thus, their expectation of privacy is not one that society would recognize as objectively reasonable. *See Russell*, 847 F.3d at 618-19; *Douglas*, 744 F.3d at 1069. Even so, the general factors used to determine standing weigh against defendants. *See Gomez*, 16 F.3d at 256 (citing *United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir. 1991)). Although defendants had possession and control over the SUV, the ability to regulate access to the SUV, and likely had subjective

expectations of privacy to some extent, they did not have ownership and their expectations were not objectively reasonable. The only stated relationship defendants had to the owner was that she was a friend of Harris' friend or perhaps the cousin of a friend of a friend. Defendants, despite driving a long distance, had little historical use of the SUV, only having it in their possession for less than a day. *See Baker*, 221 F.3d at 442 (possessing the vehicle for four to six weeks prior to the search). Further, the only belongings defendants had in the vehicle, setting aside whether they disclaimed ownership of those items at the scene, were items commonly found on an individual's person such as phones, wallets, a backpack, a purse, and a hoodie. On balance, these factors weigh against standing here.

Lastly, the Court notes that the government has not asserted that Campbell-Martin lacks standing to contest the search of the SUV, discussing only her lack of standing as to the backpack. (Docs. 42-1, at 14-15; 49, at 2). Campbell-Martin asserts that the government has thus waived this argument. (Doc. 57, at 3-5). It is unclear why the government would only argue standing as to the backpack and not the SUV when the backpack was inside the SUV; perhaps the government erroneously assumed Campbell-Martin did not assert standing as to the SUV when she in fact did. (Doc. 36-1, at 9). Regardless, Judge Roberts was within his discretion to find Campbell-Martin lacked standing as to the SUV. As explained above, the Court concurs with Judge Roberts' analysis. Thus, the Court declines to find that Campbell-Martin has standing as to the SUV merely because the government failed to explicitly argue this issue.

Thus, the Court **overrules** defendants' objections as to their standing to contest the search of the SUV and **adopts** Judge Roberts' R&R without modification.

## C.     Standing to Contest the Search of the Backpack

In his R&R, Judge Roberts found that Leiva has standing to challenge the search of the backpack, but that Campbell-Martin does not.   As to Leiva, the backpack was found on the floor of the front-passenger seat where Leiva had been sitting.   (Doc. 55, at 22-23).   Judge Roberts found that Leiva did not disclaim his interest in the backpack prior to the search and thus has standing.   (*Id.*, at 25).   Further, Judge Roberts found that Campbell-Martin failed to identify any expectation of privacy she had in the backpack and had, in fact, denied having any knowledge about the backpack.   (*Id.*, at 21).   She later stated that the backpack belonged to Leiva and that she saw him retrieve a large amount of methamphetamine and place it in the backpack while in Altoona.   (*Id.*).

Both defendants responded to this issue in their objections.   Leiva concurs with the R&R, asserting that he did not disclaim ownership of the backpack and that, even if he had, it would not prevent him from having standing here because the backpack was found in an area under his immediate control.   (Doc. 56, at 15-16).   Campbell-Martin objects to the R&R, asserting that her reasonable expectation of privacy in the SUV "extends to objects and containers within" the SUV.   (Doc. 57, at 8).

No party has timely objected to Judge Roberts' finding that Leiva has standing as to the backpack and, thus, the parties have waived their rights to a de novo review of the R&R on this issue.   *See, e.g.*, *Newton*, 259 F.3d at 966.   Therefore, the Court reviews this finding for clear error.   *See id*. The Court finds no clear error here.

Campbell-Martin's only objection here relies on her standing to contest the search of the SUV, thus affording her standing as to its contents including the backpack.   As discussed, the Court finds that Campbell-Martin does not have standing to contest the search of the SUV and thus has no standing to contest the search of its contents.

Thus, the Court **overrules** Campbell-Martin's objection as to her standing to contest the search of the backpack and **adopts** Judge Roberts' R&R without modification.

**D.      Searches of the SUV and Backpack under the Fourth Amendment**

**1. Inventory Search Exception**

In his R&R, Judge Roberts concluded that the search of the SUV and its contents was a proper inventory search. (Doc. 55, at 32). Although Officer Hotz and Sergeant Holland may have been "motivated in part by investigatory desire," Judge Roberts found that the impoundment of the vehicle was consistent with the Marion Police Department's policies. (*Id.*, at 31). The policy states that officers may impound a vehicle in a variety of circumstances, including if "the owner or other person in possession of the vehicle is arrested AND the arrested person is unwilling or unable to have the vehicle moved." (Doc. 42-2, at 1). Judge Roberts concluded that even if Harris were in possession of the SUV, Harris did not appear to have a valid driver's license and thus could not have driven the SUV from the scene. (Doc. 55, at 31). Judge Roberts further held that officers acted in accordance with the Marion Police Department's inventory procedures until the search of the SUV continued after the methamphetamine was discovered. (*Id.*, at 36); *see also* (Doc. 42-2) ("If evidence or contraband is inadvertently discovered during an inventory search, the inventory search should immediately stop, and law enforcement should obtain a warrant[.]"). Despite this violation, Judge Roberts concluded that the officers did not act pretextually or in bad faith. (*Id.*, at 37). Instead, Judge Roberts found that the officers acted in their caretaking function, not their investigatory function. (*Id.*).

Both defendants object. Leiva asserts that the officers acted in their investigatory function, noting that the officers' statements at the scene indicate that the inventory search was a mere pretext for a "general rummaging." (Doc. 56, at 26-34).[4] Campbell-Martin

---

[4] Leiva also argues that, even if this were a proper inventory search, it should have ceased when Officer Hotz discovered a "spray can she appears to believe was associated with drug use." (Doc. 56, at 25). Officer Hotz found a can of Supertech R-134a auto air conditioning refrigerant in the backseat of the SUV. (Ex. B at 36:05). The Court fails to see how this can is associated

also objects, similarly asserting that the officers' inventory search was a ruse to discover contraband. (Doc. 57, at 9-11). Campbell-Martin argues that Judge Roberts erred in discounting the subjective intent of the officers here. (*Id.*). Further, Campbell-Martin asserts that officers failed to "take any serious steps" to determine who owned the SUV, whether it had been lent to Harris, and whether Harris had a valid license to drive it, noting that Officer Hotz only found that Harris' license was invalid months later. (*Id.*, at 12-13). Campbell-Martin concludes that the officers' investigatory motives and failure to follow department policy invalidate the search of the SUV and backpack here.

Upon impoundment of a vehicle, law enforcement officers may perform an inventory search to protect the owner's property while it remains in police custody, protect the police from liability as to the property, and mitigate any potential danger the property may present. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (citations omitted). Thus, in performing an inventory search of a vehicle, police act in a caretaking function and not in an investigative function. *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011). Thus, no level of probable cause or suspicion is required. *Id.* An inventory search, however, "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Any inference of investigatory motive is typically vitiated when police conduct the inventory search in accordance with department policy. *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993). Courts will uphold an inventory search as proper even if it does not precisely conform to department policy so long as "it is not a pretext for an

---

with drug use. Moreover, upon discovering the can, Officer Hotz immediately asked Sergeant Holland "What do you use this for? Would that—Would that be for AC you think? The refrigerant, the coolant, and stuff?" She then disregarded the can. At best, Officer Hotz found the can initially suspicious and then quickly concluded it was *not* associated with drug use. The Court finds the can was not contraband, that Officer Hotz did not appear to believe it was contraband, and that her discovery of the can is irrelevant to this analysis.

investigatory search." *Taylor*, 636 F.3d at 465. "Something else" beyond mere noncompliance must indicate that police acted with an investigatory motive. *United States v. Morris*, No. CR16-4096-LTS, 2017 WL 3495186, at *9 (N.D. Iowa Aug. 15, 2017) (quoting *United States v. Trevino*, No. 15-CR-2037-LRR, 2016 WL 2752386, at *3 (N.D. Iowa May 10, 2016)).[5] Therefore, court must examine whether the vehicle was properly impounded, whether the search was conducted in accordance with department policy, and whether the officers acted in bad faith or with the sole purpose of investigation. *Colorado v. Bertine*, 479 U.S. 367, 37 (1987). Ultimately, "[t]he central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005).

It is critical to keep in mind that "[t]he officer's subjective intent is irrelevant." *United States v. Faulkner*, No. 5:17-CR-50144-JLV, 2018 WL 6985006, at *9 (D.S.D. Aug. 30, 2018) (citing *Marshall*, 986 F.2d at 1175-76). Indeed, an officer's mere suspicion that evidence may be discovered during an inventory search does not itself render the search investigative. *United States v. Porter*, 859 F.2d 83, 85 (8th Cir. 1988) (per curiam).

First, the Court considers whether the SUV was properly impounded. The government cites two bases in the Marion Police Department policies that warranted impoundment here. (Doc. 42-1, at 19). The first basis allows impoundment "[w]hen the owner or other person in possession of a vehicle is arrested AND the arrested person

---

[5] Leiva asserts that non-compliance with department policy "creates an inference of pretext." (Doc. 56, at 27). This is incorrect. Inventory searches are not automatically unreasonable when department policies are not followed. *United States v. May*, 440 F. Supp. 2d 1016, 1037-38 (D. Minn. 2006); *see also Whren v. United States*, 517 U.S. 806, 816 (1996) ("[I]t is a long leap from the proposition that following regular procedures is some evidence of lack of pretext to the proposition that failure to follow regular procedures proves (or is an operational substitute for) pretext.").

is unwilling or unable to have the vehicle moved." (Doc. 42-2, at 1). The R&R relies on this basis, concluding that Campbell-Martin had been arrested and that the SUV could not be relinquished to Harris because Harris did not have a valid license. Harris provided his driver's license at the scene. Even though it was apparently later discovered that Harris' license was invalid, officers believed Harris' license was valid at the time of the search. (Ex. C at 19:48). Harris even inquired if he could drive the SUV and was simply told that he could not. (*Id.* at 18:40). It would be illogical to read the policy as precluding another person in possession of a vehicle to be barred from operating it simply because the owner or driver was arrested. This is particularly true here when Harris is the party with the most direct, albeit weak, claim to authority over the SUV. Thus, the Court finds this policy to be ill-fitting at best if not outright inapplicable and sustains Campbell-Martin's objection on this issue. (Doc. 57, at 12-13).

The second basis cited by the government, however, is appropriate. The Marion Police Department policies also allow impoundment if "the officer is unable to determine if the vehicle is properly registered and there is some question as to who should have possession of the vehicle." (Doc. 42-2, at 1). Officers were able to determine at the scene that the SUV was registered to Kristin Jefferson. This fact does not preclude application of the policy. The language of the policy requires that there be some question as to whether the vehicle is *properly* registered, not simply a question as to whether it is registered at all. Here, confusion abounded as to who Kristin Jefferson was, who April Johnson or Johnston was, and what the extent of April's authority over the vehicle was. This confusion goes directly to whether the SUV was properly registered to the correct person or persons. Moreover, such confusion is explicitly contemplated by the added requirement that there be "some question as to who should have possession of the vehicle." As discussed, it was far from clear that Harris or either defendant had permission from anyone with authority over the SUV to operate it. The Court finds this

policy to be both proper and fitting here and therefore modifies Judge Roberts' R&R on this issue. Thus, the Court finds that the SUV was properly impounded.

Second, the Court considers whether the officers followed department policy during the search of the SUV. After a vehicle is properly impounded, officers may search its contents to protect the owner's property, protect the department from liability, and protect officers from any potential dangers in the vehicle. (Doc. 42-2, at 1). Because the SUV was properly impounded here, officers appropriately began to inventory its contents. Although defendants have cited various statements by the officers at the scene that show the officers were suspicious that drug activity was afoot and that they had some investigatory desire to search the vehicle, the Court finds that these statements do not corrupt an otherwise proper inventory search. Defendants ask the Court to invalidate the search based on the officers' alleged subjective intent, which is an irrelevant consideration here. Further, other conduct by the officers suggests that they had abandoned their intent to investigate for drugs once defendants were in custody. For example, Officer Hotz called to tell the canine search team not to come after arresting Campbell-Martin and before searching the SUV. (Ex. B at 33:45).

There was no breach of the Marion Department policies up until the discovery of the methamphetamine in the backpack. The policies state that an inventory search should cease upon discovery of contraband. (*Id.*, at 2). Thus, the inventory search exception is applicable at least up until the discovery of the methamphetamine.

Last, the Court considers whether the officers acted in bad faith or with the sole purpose of conducting an investigation. This final consideration is particularly applicable to evidence that was found after the methamphetamine, i.e. evidence such as the scale, baggies, money, and ledger with defendants' names on it that was discovered while in breach of the inventory policy. Upon discovering the methamphetamine, the officers ceased searching the SUV for a time and began reading defendants their rights,

questioning Harris and defendants, and making calls to discuss the situation with other officers. Once Sergeant Holland resumed his search of the SUV, he proceeded with caution by coordinating with other officers, repeatedly photographing the scene, and separating out potential evidence from other miscellaneous items. Although the officers were acting at least partially with an investigatory purpose at this point, their goal of inventorying the SUV's contents remained, particularly for the purpose of officer safety. The caution exhibited by officers once the methamphetamine was discovered is evident in their subsequent efforts to alert defendants of their rights, document the search thoroughly, and call other parties for advice on how to proceed. The Court finds, based on the totality of the circumstances, that the search was reasonable, even after the methamphetamine was discovered. The officers' actions exhibit a lack of bad faith or sole investigatory purpose and, thus, the breach of the Marion Police Department's policy alone does not invalidate either the pre- or post-methamphetamine searches of the SUV.

Thus, the Court **overrules in part** and **sustains in part** defendants' objections as to the inventory search and **adopts** Judge Roberts' R&R with modification.

## 2. *Search Incident to a Lawful Arrest Exception*

In his R&R, Judge Roberts concluded that the search incident to arrest exception did not apply here because "the search was not necessary either to protect officer safety or to preserve evidence from destruction." (Doc. 55, at 38). Specifically, Judge Roberts found that the government did not "show officers had a reasonable belief that evidence of the offense of arrest may have been in the SUV." (*Id.*). Both Leiva and Campbell-Martin were arrested for providing false information. Judge Roberts held that the officers here did not have a reasonable belief that further evidence of this offense could be discovered in the vehicle. (*Id.*, at 39). Leiva agrees with this finding, noting that the similar offense of driving on a suspended license generally does not provide a reasonable basis to search a vehicle under this exception. (Doc. 56, at 34-36) (citing

*Arizona v. Gant*, 556 U.S. 332 (2009); *People v. Lopez*, 453 P.3d 150 (Cal. 2019)).
Campbell-Martin makes no mention of this exception in her objections.

No party has timely objected to Judge Roberts' finding here and, thus, the parties
have waived their rights to a de novo review of the R&R on this issue. *See, e.g.*,
*Newton*, 259 F.3d at 966. Therefore, the Court reviews this finding for clear error.
*See id.* The Court has a definite and firm conviction that an error has been committed
as to this issue. *See U.S. Gypsum Co.*, 333 U.S. at 395.

A search incident to a lawful arrest is an exception to the warrant requirement that
is justified either by concern for officer safety or the need to collect evidence of the
offense of arrest. *United States v. Robinson*, 414 U.S. 218, 226 (1973). Under this
exception, officers may search "the arrestee's person and the area within his immediate
control." *Chimel v. California*, 395 U.S. 752, 763 (1969). Officers may search items
in the arrestee's vehicle if the arrestee is within reaching distance of the vehicle during
the search or "if the police have reason to believe that the vehicle contains evidence
relevant to the crime of arrest." *Davis v. United States*, 131 S. Ct. 2419, 2425 (2011)
(internal citation and quotation marks omitted). "Even after an arrestee has been secured
in the back of a police car, officers may search the vehicle incident to an arrest if their
observations provide a 'reasonable basis' to conclude that evidence of the crime of arrest
'might be found in the vehicle.'" *United States v. Allen*, 713 F.3d 382, 387 (8th Cir.
2013) (quoting *United States v. Tinsley*, 365 Fed. App'x 709, 711 (8th Cir. 2010) (per
curiam)).

This exception applies in cases when the crime of arrest is providing false
information. *See, e.g.*, *United States v. Smith*, No. 2:18-cr-00023-JPH-CMM, 2019
WL 1383939, at *1, *4-5 (S.D. Ind. Mar. 26, 2019) (denying a defendant's motion to
suppress and finding that officers properly searched defendant's person and backpack
incident to arresting him for providing false information, i.e. giving officers a rearranged

version of his real name); *United States v. Mahler*, No. 1:13-cr-00123-EJL, 2014 WL 495631, at *3-4 (D. Idaho Feb. 5, 2014), *aff'd*, *United States v. Gomez-Gutierrez*, 620 Fed. App'x 624 (2015) (upholding the search of a vehicle incident to defendant's arrest for providing false information, i.e. giving a fake name to police, despite the fact that the defendant was already handcuffed, "because it was reasonable to believe the officers would find some identification or other indicia revealing the Defendant's true identity"); *State v. White*, 489 N.W.2d 792, 793, 795 (Minn. 1992) (holding a defendant's vehicle could be searched incident to his arrest for providing false information, i.e. offering a fake name to police); *Armstead v. Commonwealth*, 695 S.E.2d 561, 566 (Va. Ct. App. 2010) ("The power to arrest [the defendant] for providing false identity information . . . authorized the officer to search the vehicle because it was 'reasonable to believe' the vehicle 'might' contain evidence of that crime[.]"); *State v. Robinson*, 812 P.2d 837, 839-40 (Ore. Ct. App. 1991) (finding the defendant's vehicle was properly searched incident to his arrest for providing false information, i.e. giving officers a fake name that did not match the registration); *State v. Gordon*, 821 P.2d 442, 443-44 (Ore. Ct. App. 1991) ("Evidence of defendant's identity was relevant to the crime of giving false information to an officer. Accordingly, the search of defendant's vehicle for evidence of identification was proper as a search incident to arrest."); *see also United States v. Stamps*, 430 F.2d 33, 36 (5th Cir. 1970) (upholding a search incident to a defendant's arrest for false information, i.e. providing a fake name to police, based on officer safety).

Leiva's reliance on *Arizona v. Gant*, 556 U.S. 332 (2009), and *People v. Lopez*, 8 Cal. 5th 353 (2019), is misplaced. In both cases, the offense of arrest was driving on a suspended license. *Gant*, 556 U.S. at 332; *Lopez*, 8 Cal. 5th at 529. The offenses here were providing false information. In fact, a footnote in the concurrence in *Lopez* states:

In some cases, the officer's questioning of the driver about his or her

identity may demonstrate that the driver has lied to the officer in violation of Vehicle Code section 31 (giving false information to a peace officer), Penal Code section 148.9 (giving false identity to a peace officer), and perhaps in violation of Penal Code section 530.5 (false personation). The officer may then arrest the driver and search the vehicle for evidence of those violations, including evidence of correct identity.

The Court finds that driving on a suspended license and providing false information to police are distinguishable offenses and that the latter is not subject to the same evidentiary limitations. *See also Robinson*, 812 P.2d at 839 (noting that the search incident to arrest exception cannot be invoked based on a driver's failure to provide identification but can be invoked for the offense of providing false information).

There is no dispute here that both defendants provided false information to law enforcement officers. Leiva identified himself as Favian Estrada; that is not his true name. Leiva was arrested for providing false information after his alias returned the profile of an obviously different person. Campbell-Martin identified herself as Shannon McKelvy; that is not her true name. Campbell-Martin was arrested after Harris retrieved her ID from her purse and provided it to law enforcement officers. It is immaterial that law enforcement officers already possessed evidence that both defendants provided false information. In other words, officers need not desist when they possess some evidence of an offense; they may continue to search until they have uncovered all the evidence that is within their lawful authority to obtain.

The officers here had a reasonable belief that evidence of defendants' false information would be present in the SUV. *United States v. Mahler*, 2014 WL 495631, is particularly instructive. There, the defendant provided the officer with his brother's name which, upon being searched, returned a photo that "somewhat resembled" the defendant. The officer was unconvinced and suspicious, particularly because the defendant was "extremely nervous." Officers eventually obtained a true photograph of

the defendant and were able to ascertain his identity. Officers then arrested the defendant for driving while suspended, driving without insurance, and providing false information. A pat-down search of the defendant did not recover his wallet or identification. Officers searched the defendant's vehicle and found methamphetamine in both the center console and a backpack, among other contraband. *Id.*, at *1-2. The court found the search of the vehicle was proper as incident to the defendant's arrest for providing false information, noting in part:

> Further, it is reasonable to believe that an adult, such as the Defendant, would have some form of identification or some item that would reveal his identity located either on his person or within the vehicle in which he was traveling and had been using for a week. Since the officers did not discover a wallet or any other identifying information on the Defendant's person during their frisk the next logical place to look for evidence of his identity was the vehicle in which he was traveling and had been in possession. There were a number of personal items in plain view contained in the vehicle that the officers reasonably concluded belonged to the Defendant and that [could] contain evidence of his identity. Given the totality of the circumstances in this case, the Court finds the officers lawfully searched the vehicle incident to arrest.

*Id.*, at *4.

Here, officers had also already confirmed that defendants provided false information and had evidence confirming their real identities. Even so, it was reasonable for officers to believe that the vehicle defendants had been travelling in would contain additional identifying information, particularly Leiva's license which had not yet been recovered. The backpack near Leiva was a logical place to search for such further identification. *See id.*; *see also Smith*, 2019 WL 1383939, at *1, *4-5 (upholding the search of a defendant's backpack for identifying information).[6] Thus, it was within the

---

[6] Leiva's wallet and identification were ultimately found in the center console of the SUV. (Doc. 37, at 5); *see also* (Ex. C at 53:12).

officers' authority to search the SUV for evidence of the arresting crime even though defendants had already been secured and some evidence had already been collected.

Thus, the Court **rejects** Judge Roberts' R&R on this issue and finds that the search of the SUV and backpack here are justified as searches incident to defendants' lawful arrests for providing false information.

### 3. Other Exceptions

In his R&R, Judge Roberts discusses the inevitable discovery doctrine and automobile exception to the warrant requirement. As to the inevitable discovery doctrine, Judge Roberts found that it did not apply because the government did not offer any evidence that law enforcement officers were "actively pursuing a substantial, alternative line of investigation" at the time of the alleged constitutional violation. (Doc. 55, at 26-27). Leiva concurs with the R&R (Doc. 56, at 37) and Campbell-Martin makes no mention of this doctrine in her objections. As to the automobile exception, Judge Roberts declined to consider it because the government did not argue that it applied. Neither defendant mentions the automobile exception in their objections.

The parties have not timely objected to these findings and, thus, have waived their rights to a de novo review of the R&R. *See, e.g.*, *Newton*, 259 F.3d at 966. Therefore, the Court reviews Judge Roberts' R&R for clear error on these issues. *See id*. The Court finds no clear error in Judge Roberts' decisions here. Thus, the Court **adopts** Judge Roberts' R&R on these issues and finds that the inevitable discovery doctrine and automobile exception are inapplicable here.[7]

---

[7] Leiva also argues that no exigent circumstances justified the warrantless searches here. (Doc. 56, at 23-24). Exigency was not raised by the government or discussed in the R&R. Due to a lack of resistance, the Court also finds that no exigent circumstances were present here.

## V.    CONCLUSION

For these reasons, the Court **overrules in part** and **sustains in part** defendants' objections (Docs. 56 & 57), **adopts in part** and **rejects in part** Judge Roberts' R&R with modification (Doc. 55), and **denies** both defendants' motions to suppress (Docs. 34 & 36).    Specifically, the Court finds that the seizure of defendants was proper, that neither defendant has standing as to the SUV, that Leiva has standing as to the backpack but Campbell-Martin does not, and that the searches of the SUV and backpack here were proper either as inventory searches or searches incident to defendants' lawful arrests for providing false information.

**IT IS SO ORDERED** this 4th day of February, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa